499 So.2d 577 (1986)
Syble C. WALLACE, Plaintiff-Appellant,
v.
AETNA LIFE AND CASUALTY INSURANCE COMPANY, Defendant-Appellee.
No. 18324-CA.
Court of Appeal of Louisiana, Second Circuit.
December 3, 1986.
Travis M. Holley, Bastrop, for appellant.
*578 Theus, Grisham, Davis & Leigh by Thomas G. Zentner, Jr., Monroe, for appellee.
Before JASPER J. JONES, SEXTON and LINDSAY, JJ.
LINDSAY, Judge.
The plaintiff, Syble C. Wallace, appeals a trial court judgment denying her claim against the defendant, Aetna Life and Casualty Insurance Company, for medical expenses. For the following reasons, we affirm the trial court judgment.

FACTS
On or about April 10, 1982, plaintiff was injured in a two car accident. Plaintiff was riding in an automobile she owned and which was being driven by her daughter. As a result of her injuries, plaintiff ultimately underwent surgery for the removal of two discs from her cervical spine. Medical bills totaled $22,505.95 and plaintiff suffered a twenty-five percent permanent disability. Plaintiff had auto insurance from The Trinity Companies with a policy limit of $100,000. Her daughter was insured by Allstate Ins. Co. with a policy limit of $5,000 and the other driver was insured by National General Insurance Co. with a policy limit of $10,000. Plaintiff settled her claims and released these parties collecting $90,000 from Trinity, $5,000 from Allstate and $10,000 from National General for a total recovery of $105,000.
Plaintiff was also insured under a group health insurance policy with the defendant, Aetna, through her employer, Jim Walter Homes. On August 15, 1982, plaintiff was fired from her employment with Jim Walter Homes. The Aetna policy specified that plaintiff had thirty-one days from the date of termination of her employment to convert the policy from a group policy to an individual policy to avoid a lapse in coverage. Plaintiff testified at trial she was aware of her conversion rights at the time she was fired. Although the policy did not contain a provision requiring notice to the employee of lapse of coverage, a notice was sent to plaintiff on September 21, 1982 notifying her of her right to convert the group health insurance policy to an individual policy. At that time, plaintiff was hospitalized in New Orleans. The conversion form was returned to Aetna on October 20, 1982. Aetna refused to convert the policy.
The record in this case reveals that after plaintiff attempted to convert the group policy to an individual policy and was rebuffed by the defendant, she took no further action against the defendant but proceeded to assert her tort claims resulting from the automobile accident. Thereafter, plaintiff arrived at her settlements with the insurers in the tort action, without any reference to the defendant's medical policy. It was not until just before plaintiff settled with Allstate Ins. Co. and after the settlement with The Trinity Companies and National General Ins. Co. that plaintiff brought the present action against the defendant.
Plaintiff filed this suit on May 17, 1985 to compel defendant to pay $25,000 in medical bills, plus $25,000 in penalties and attorney fees, claiming that defendant was arbitrary and capricious in failing to pay her claim.
Plaintiff asserted that because her injury occurred while the insurance policy was in full force and effect, defendant was obligated to pay her medical bills. She also claimed that Aetna was required to give her notice of the lapse of the group policy. She also contended that under the conversion notice which Aetna provided, she had thirty-one days from the date of that notice to convert the policy, rather than thirty-one days from the date of termination of her employment. She also claimed that coverage remained in effect because she was totally disabled from the date of the accident on April 10, 1982 until July, 1983 and under the terms of the policy if the insurance terminates while an insured is totally disabled, the coverage will continue during the term of disability, not to exceed one year.
The defendant contended that plaintiff did not timely file her statement of intent *579 to convert the policy from group coverage to individual coverage and claimed that the plaintiff failed to file the necessary proof of loss regarding the accident. Aetna's main defense, however, was based upon the contention that plaintiff violated the terms of the group medical and hospitalization insurance policy when she gave full and unconditional releases to the tort-feasors and their insurers. The policy language is as follows:
If a covered family member is injured through the act or omission of another person, the benefits provided under Article II ... of this policy shall be paid only on the condition that the covered family member (or his legally authorized representative if the covered family member is legally incapable) shall agree in writing:
(1) To pay the Insurance Company from any damages collected, to the extent of such benefits provided, immediately upon collection of damages with respect to such covered family member whether by action at law, settlement, or otherwise; and
(2) to provide the Insurance Company with a lien, to the extent of such benefits provided. The lien may be filed with the person whose act caused the injuries, his agent, or a court having jurisdiction in the matter.
In written reasons for judgment, the trial court found this to be a reimbursement clause and not a subrogation clause. The trial court found that plaintiff did not seek payment of medical expenses from the defendant when those expenses were incurred, that the reimbursement agreement was not perfected, and that plaintiff collected damages from others exceeding the medical expenses incurred and she was therefore not entitled to recovery against the defendant. Therefore, the trial court found in favor of the defendant, dismissing plaintiff's claim. The plaintiff appealed, essentially claiming the trial court erred in finding that the defendant was not obligated to pay all of the medical expenses which she incurred.
At the outset we note that because we agree with the interpretation given by the trial judge to the above quoted policy language, it is unnecessary for us to pass upon the other contentions raised by the parties, such as plaintiff's right to recovery for an injury which occurred before her employment was terminated,[1] the effectiveness of the attempted conversion of the group policy to individual coverage after plaintiff ceased her employment with Jim Walter Homes, and whether plaintiff failed to file a proper proof of claim. Consideration of these issues is made unnecessary by our decision regarding the main issue in this appeal.
The basic issue before this court is whether the plaintiff failed to prove the amount to which she was entitled and whether she failed to comply with the terms of the above quoted reimbursement clause in the policy, thereby relieving the defendant of the obligation to pay plaintiff's medical expenses.
Plaintiff claims this is a subrogation clause and that because the amount received in the settlements did not fully compensate her for the total amount of her damages, the settlement with her tort-feasors does not relieve defendant of the obligation to pay her medical expenses. Plaintiff cites Carter v. Bordelon, 370 So.2d 113 (La.App. 1st Cir.1979) for this contention. Said another way, plaintiff contends that defendant cannot be subrogated to her rights when she has not been fully compensated by those who caused the injury.
In considering this theory of plaintiff's case, it appears that she must first show that she did not recover full compensation from the tort-feasors and second, she must also show that the above quoted clause in the insurance policy is a subrogation clause.
*580 First, plaintiff argues that because she had approximately $22,500 in medical bills and sustained a twenty-five percent permanent disability as a result of her injury, the $105,000 received in settlement from the tort-feasors failed to compensate her fully for her damages. In support of this contention, plaintiff cites two cases where female plaintiffs, with injuries similar to hers, recovered in excess of $105,000. Williams v. City of New Orleans, 433 So.2d 1129 (La.App. 4th Cir.1983), writ denied, 437 So.2d 1135 (La.1983); Oshinski v. Central National Insurance Company of Omaha, 432 So.2d 929 (La.App. 4th Cir. 1983), writ denied, 440 So.2d 148 (La.1983).
Because plaintiff asserted the fact that the settlements she received failed to compensate her for her total damages, she must carry the burden of proving that fact by a reasonable preponderance of the evidence. Meyer v. State Department of Public Safety License Control and Driver Improvement Division, 312 So.2d 289 (La. 1975), and other cases cited therein. Plaintiff has failed to carry her burden of proof. Plaintiff briefly described her injuries and the depositions of her physicians were filed in evidence. Plaintiff introduced into evidence medical bills totalling $22,505.95. Also included in the record are settlement agreements entered into by the plaintiff totalling $105,000. We are not convinced that plaintiff has shown that her total damages exceeded the amount she recovered in settlement. The cases cited by the plaintiff for the proposition that damages for a similar injury are in excess of $105,000 are inapposite. Plaintiff did not show loss of ability to carry out employment nor did she show any other factors tending to substantiate a higher award for general damages. Actually, the record shows that plaintiff was working at the time of the trial. Plaintiff has failed to offer any proof regarding future medical expenses. Therefore, plaintiff's argument that she was not fully compensated for her injuries must fail.
Secondly, plaintiff also errs in contending that the clause in the insurance policy is a subrogation clause. We find, as did the trial court, that the clause is one of reimbursement, not subrogation. Subrogation is a legal fiction whereby an obligation is extinguished with regard to the original creditor by payment which he has received from a third person, or from the original debtor with funds provided by a third person. The third person then steps into the shoes of the original creditor, acquiring the right to assert the actions and rights of the original creditor. Bond v. Commercial Union Assurance Company, 407 So.2d 401 (La.1981). The intent to convey the right of subrogation must be clearly expressed. Former LSA-C.C. Art. 2160; Harris v. Huval Baking Company, 265 So.2d 783 (La.App. 3rd Cir.1972), writ denied 263 La. 103, 267 So.2d 210 (1972). The clause in this case does not express the right of subrogation. No mention is made in the clause of a right of subrogation and from the import of the wording of the clause, it is clear that a right other than that of subrogation was intended. The clause does not give the insurer the right to recover from the true debtor for amounts paid to the insured, but rather requires the insured to pay over to the insurer the amounts the insured recovers from the true debtor. The clause in the present case is therefore one of reimbursement and not one of subrogation.
The purpose of such a clause is to prevent an injured party from multiple recovery for the same injury. Liberty Mutual Insurance Company v. Weinberger, 329 So.2d 254 (La.App. 4th Cir.1976); Harris v. Huval Baking Company, supra. As stated previously, plaintiff received in settlement an amount far in excess of medical expenses. The inescapable conclusion is that her medical expenses have been paid by those responsible for her injuries.
Therefore, since plaintiff has been fully compensated for her medical expenses, she is not entitled to additional payment of those expenses by the defendant. Even if the defendant had paid plaintiff's medical expenses, defendant would then have been entitled to reimbursement of those expenses from the plaintiff from her settlement *581 proceeds. Plaintiff is not entitled to receive multiple recovery for the same injury.
Further, even if plaintiff had not recovered the full amount of her medical expenses from the tort-feasor, she would still have no right to recover her medical expenses from the defendant since she failed to comply with the condition for payment contained in the reimbursement clause of the policy. That clause requires that before medical expenses will be paid, the insured must give the insurer, in writing, the right to be reimbursed for amounts the insurer pays should the insured recover for those expenses from another source. The trial court was correct in finding this clause created a conditional obligation. This was a suspensive condition to the enforcement of the contract of insurance between the parties.
The Louisiana Civil Code provides that a conditional obligation is one dependent on an uncertain event. If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive. Former LSA-C.C. Art. 2120.[2] The right to enforce the obligation does not arise until the fulfillment of the suspensive condition and the obligation may not be enforced until the condition is met. Pringle Associated Mortgage Corporation v. Eanes, 211 So.2d 399 (La.App. 1st Cir.1968), writ denied 252 La. 887, 214 So.2d 715 (1968); Blair v. Diaz, 342 So.2d 1237 (La.App. 4th Cir.1977), writ denied 345 So.2d 59 (La. 1977).
Even if plaintiff had carried her burden of proving that she had not been fully compensated for her medical expenses, she could still not recover under the under the insurance policy because no reimbursement rights had been granted to the defendant. Because this condition was not fulfilled, plaintiff had no right to enforce the obligation. The trial court was correct in dismissing plaintiff's claim against the defendant.

CONCLUSION
Under the facts of this case, and for the above stated reasons, the trial court judgment dismissing plaintiff's claims against the defendant is correct and is affirmed. Costs in these proceedings and in the court below are taxed to plaintiff.
AFFIRMED.
NOTES
[1] But see Peters v. Life General Security Insurance Company, 400 So.2d 1103 (La.App. 1st Cir. 1981), writ denied 403 So.2d 70 (La.1981); Wharton v. Louisiana Hospital Service, Inc., 183 So.2d 133 (La.App. 1st Cir.1966), writ denied 249 La. 62, 184 So.2d 734 (1966).
[2] The Louisiana Civil Code dealing with the law of obligations was revised by Acts 1984, No. 331 and became effective January 1, 1985. The law regarding conditional obligations and suspensive conditions has not changed and is now found in LSA-C.C. Art. 1767. However, the events concerning this case occurred before the effective date of the revision, therefore we refer to the former code article and the jurisprudence interpreting them.