654 So.2d 724 (1995)
WASHINGTON NATIONAL INSURANCE COMPANY
v.
Ernest BROWN and Rosemary Brown.
No. 94 CA 1346.
Court of Appeal of Louisiana, First Circuit.
April 7, 1995.
Rehearing Denied June 6, 1995.
*725 Wood Brown, III, M. Lauren Lemmon, New Orleans, for plaintiff-appellant Wash. Nat. Ins. Co.
Lawrence A. Arcell, Harold J. Lamy, New Orleans, for defendants-appellees Ernest Brown and Rosemary Brown.
Before LeBLANC, PITCHER and FITZSIMMONS, JJ.
PITCHER, Judge.
This is an appeal from a judgment denying Washington National Insurance Company's claim for reimbursement of medical expenses paid to Ernest and Rosemary Brown. We reverse and render.

FACTS AND PROCEDURAL HISTORY
This matter originally arose out of a February 24, 1990, automobile accident in which Rosemary Brown (Mrs. Brown) was injured. Mrs. Brown was a guest passenger in an automobile that was rear-ended. At the time of the accident, Mrs. Brown's husband, Ernest Brown, was an employee of Terrebonne Parish School Board. The school board provided its employees with group health insurance through Washington National Insurance Company (Washington National). Since Mrs. Brown was a dependent of Ernest Brown (Mr. Brown), she was covered under Mr. Brown's group health policy.
Following the accident, a claim was made to Washington National on behalf of Mrs. Brown for payment of medical expenses she incurred as a result of the accident. Washington National paid $45,326.36 in medical expenses on behalf of Mr. and Mrs. Brown. Mr. Brown signed a reimbursement agreement on January 31, 1991, agreeing to reimburse Washington National through proceeds recovered from any settlement or legal action instituted for injuries Mrs. Brown sustained in the accident.
Mrs. Brown filed suit against the third party tortfeasor and the insurer of the third party tortfeasor for the damages she sustained in the accident. On November 2, 1992, Mrs. Brown signed a receipt and release agreement releasing the third party tortfeasor and its insurer from liability and accepting a lump sum of $140,000.00 in settlement her claims. As a result, Mrs. Brown's *726 lawsuit against the third party tortfeasor and its insurer was dismissed.
On May 19, 1993, Washington National filed suit against Mr. and Mrs. Brown for reimbursement of the medical expenses paid by Washington National. Trial was held on January 10, 1994. After the trial, judgment was rendered in favor of Mr. and Mrs. Brown and dismissing Washington National's lawsuit.[1] In oral reasons, the court stated that Washington National's claim had prescribed and Washington National failed to meet its burden of proof to recover the benefits paid for medical expenses. Washington National now appeals and alleges the following assignments of error:[2]
1. The trial court erred in treating an action to enforce the terms of a reimbursement clause as subrogation subject to a one year prescriptive period and triggered by the tort.
2. The trial court erred in determining that their [sic] is no distinction between subrogation and reimbursement.
3. The trial court erred in determining that Washington National's failure to intervene in the lawsuit resulted in the waiver of their right to sue for reimbursement pursuant to a reimbursement clause in a contract and there was no lien otherwise.
4. The trial court erred in distinguishing between the amount paid directly to the insured and the amount paid to the doctors and interpreting that to mean that the insured was only obligated to pay back the amount paid directly to them from Washington National.
5. The trial court erred in determining that plaintiff failed to carry its burden of proof to show what portion of the medical expenses was owed.

ASSIGNMENT OF ERROR NUMBER ONE
Through assignment of error number one, Washington National contends that the trial court erred in concluding that the prescriptive period of one year was applicable and that its claim had prescribed. Washington National further contends that the action was brought pursuant to the reimbursement clause in its health plan, and therefore, the ten year prescriptive period for a contract action is applicable.
Washington National's contention that its action did not prescribe is supported by the case of Louviere v. Shell Oil Company, 440 So.2d 93 (La.1983). In Louviere, the plaintiffs were injured on an offshore oil platform. Within one year from the accident which caused the injuries, the plaintiffs' worker's compensation carrier, who had paid benefits to the plaintiffs, filed suit against various tortfeasors in federal district court for reimbursement of the benefits paid. The plaintiffs then filed suit against these same tortfeasors more than one year from the accident which caused their injuries.
The federal district court dismissed the claims of plaintiffs holding that although prescription was interrupted by the filing of the suit by the compensation carrier, it immediately started to run again. Since both plaintiffs filed suit more than one year after the filing of the compensation carrier's suit, both suits were barred by prescription, notwithstanding the fact that the suits were both filed during the pendency of the compensation carrier's suit. The plaintiffs appealed to the United States Court of Appeals for the Fifth Circuit, which via certified question, asked the Louisiana Supreme Court to instruct it as to the effect of the interruption of prescription occasioned by the filing of the compensation carrier's suit.
The Louisiana Supreme Court, in Louviere, responded that prescription was indeed interrupted by the filing of the compensation carrier's suit, since "there is only one principal cause of action, and the compensation insurer is asserting part of the employee's cause of action, because the insurer has paid part of the employee's damages and is entitled to recover to the extent of those payments as partial subrogee." Louviere v. *727 Shell Oil Co., 440 So.2d at 95. The court further stated that "when several parties share a single cause of action (as through partial subrogation), suit by one interrupts prescription as to all." Louviere v. Shell Oil Co., 440 So.2d at 96. The Louviere court went on to hold that once prescription is interrupted by the filing of a suit, interruption continues during the pendency of the suit, and begins to run anew from the last day of the interruption. See Provident Life and Accident Insurance v. Turner, 582 So.2d 250 (La.App. 1st Cir.1991).
In the instant case, the record reflects that Mrs. Brown was injured in an automobile accident on February 24, 1990, and subsequently, she filed suit against the third party tortfeasor within one year from the date of the accident. On November 2, 1992, Mrs. Brown signed a receipt and release agreement that settled her claim and agreed to dismiss her suit filed against both the third party tortfeasor and its insurer. The record does not reveal what date Mrs. Brown's suit against the third party tortfeasor was dismissed, but we can safely assume that it occurred either on or sometime after November 2, 1992.
Washington National's claim for reimbursement was interrupted during the pendency of Mrs. Brown's suit against the third party tortfeasor and began to run anew upon dismissal of Mrs. Brown's suit. We conclude that the dismissal must have occurred either on November 2, 1992 or shortly thereafter. Clearly, Washington National's suit for reimbursement filed on May 19, 1993 was within one year from the date of dismissal. Thus, we conclude that Washington National's claim did not prescribe.

ASSIGNMENTS OF ERROR NUMBERS TWO AND FIVE
Through assignments of error numbers two and five, Washington National argues that the trial court erred in determining that there was no distinction between subrogation and reimbursement. Washington National further argues that the trial court erred in ruling that Washington National failed to carry its burden of proof as to the portion of the medical expenses owed to them.
Washington National's policy contained the following reimbursement provision:
Reimbursement:
There shall be no coverage for expenses incurred by an Insured:
1. as a result of an injury or sickness which is claimed by the Insured to have been the result of an act or omission of a third party; and
2. for which payment is made to or on behalf of the Insured by such third party.
If a claim is made to the Company for expenses:
1. covered under the policy; and
2. for which, in the opinion of the Company, a third party may be liable;
the Company will pay benefits, provided the Insured agrees, in writing, to reimburse the Company when payment is made by such third party.
Subrogation is the legal fiction whereby an obligation is extinguished with regard to the original creditor by payment which he has received from a third person, or from the original debtor with funds provided by a third person. Wallace v. Aetna Life and Casualty Insurance Company, 499 So.2d 577, 580 (La.App. 2nd Cir.1986). The third person then steps into the shoes of the original creditor, acquiring the right to assert the actions and rights of the original creditor. Wallace v. Aetna Life and Casualty Insurance Company, 499 So.2d at 580. The intent to convey the right of subrogation must be clearly expressed. Wallace v. Aetna Life and Casualty Insurance, 499 So.2d at 580.
To reimburse means "to pay back, to make restoration, to repay that expended; to indemnify, or make whole." Black's Law Dictionary 1157 (5th ed. 1979).
In the instant case, the clause does not express a right of subrogation. The clause does not give the insurer the right to recover from the true debtor for amounts paid under the policy, but rather requires the insured to pay back the insurer from the amount the insured recovers from the true *728 debtor. Thus, we conclude that the clause is a reimbursement clause.
Turning to the issue of Washington National's failure to meet its burden of proof, jurisprudence requires that where the policy provides for reimbursement by the insured to the insurer and the insured settles with the third party tortfeasor, the insurer is entitled to collect from the insured the benefits it paid. Poche v. City of New Orleans, 518 So.2d 1137, 1138 (La.App. 4th Cir.1987), writ denied, 521 So.2d 1173 (La.1988).
The record reflects that as a result of injuries sustained by Mrs. Brown, Washington National paid medical expenses in the amount of $45,326.36. Further, the evidence showed that Mr. Brown signed, as required by Washington National's health policy, a reimbursement agreement in which he agreed to reimburse Washington National if compensation for the injuries was received from a third party.[3] We conclude that Washington National has met its burden of proof and is entitled to reimbursement from Mr. and Mrs. Brown.[4]
In reviewing the health policy, Washington National's reimbursement is subject to the following limitation:
The Company's right to reimbursement will be limited to the lesser of:
1. the amount of benefits paid by the Company; or
2. the amount paid by the third party which represents reimbursement to the Insured for such expenses.
Washington National presented medical bills paid on behalf of Mrs. Brown in the amount of $45,326.36. Mrs. Brown settled her claim against the third party tortfeasor for a lump sum of $140,000.00 without a break down as to how much represented reimbursement for expenses paid by Washington National. Based upon this evidence, we must determine which figure is the lesser between the amount of benefits paid by Washington National and the amount of expenses paid by the third party tortfeasor which represented expenses paid by Washington National.[5] Mrs. Brown's claim for medical expenses against the third party tortfeasor was dismissed under the settlement. Thus, we can conclude that the agreement fully compensated Mrs. Brown for medical expenses related to her injuries.
However, Mrs. Brown contends that she was not reimbursed for the full extent of *729 her damages, and therefore, Washington National should not be entitled to recover the medical expenses paid. Since Mrs. Brown asserts that the settlement she received failed to compensate her for her total damages, she must carry the burden of proving that fact by a preponderance of the evidence. Wallace v. Aetna Life and Casualty Insurance Company, 499 So.2d at 580.
Mrs. Brown presented testimony of her counsel and the third party tortfeasor's counsel in an attempt to show the amount of the settlement each counsel attributed to Mrs. Brown's medical expenses. However, Mrs. Brown did not present any medical testimony regarding her injuries nor did she testify about her injuries. Thus, Mrs. Brown has failed to carry her burden of proof. We must conclude that Mrs. Brown was fully compensated for her medical expenses. Based upon that conclusion, we have determined that Mrs. Brown was compensated at least to the extent of $45,326.36 for her medical expenses. Since Washington National is entitled to the lesser of either the amount it has paid or the amount the third party tortfeasor paid that represented the expenses paid by Washington National, it is irrelevant whether or not the medical expenses paid by the third party tortfeasor exceeded this lesser amount. Therefore, Washington National is entitled to reimbursement in the amount of $45,326.36.

ASSIGNMENT OF ERROR NUMBER THREE
Through assignment of error number three, Washington National contends that the trial court erred in finding that Washington National lost its right to recovery by failing to intervene in Mrs. Brown's suit against the tortfeasor.
In looking at the issue of Washington National's need to intervene in the suit, we conclude that the failure of Washington National to intervene does not lessen its right of reimbursement. A party does not lose his right of action by failure to assert his action in an incidental demand. LSA-C.C.P. art. 1037; See American Greetings v. Manuel, 602 So.2d 160, 162 (La.App. 3rd Cir.1992). Thus, Washington National did not lose its right of action for reimbursement.

ASSIGNMENT OF ERROR NUMBER FOUR
Through assignment of error number four, Washington National argues that the trial court erred in distinguishing between the amount paid directly to the insured and the amount paid to the doctors. Washington National further argues that the trial court erred in concluding that Mr. and Mrs. Brown were only obligated to pay back the amount paid directly to them by Washington National.
Because of our finding that Washington National is entitled to full reimbursement of the amount it paid the Browns, a discussion of this assignment of error is not necessary.

CONCLUSION
For the foregoing reasons, the judgment of the trial court holding that Washington National is not entitled to reimbursement is reversed. Judgment is rendered granting Washington National reimbursement from Mr. and Mrs. Brown for benefits paid in the amount of $45,326.36. Costs of this appeal are assessed to Mr. and Mrs. Brown.
REVERSED AND RENDERED.
LeBLANC, J., concurs.
NOTES
[1] The judgment was signed on April 11, 1994.
[2] Mr. and Mrs. Brown contend that language used in Washington National's brief accusing their counsel of perpetuating fraud violates Uniform Rules-Court of Appeal, Rule 2-12.4. We find that this contention lacks merit.
[3] Mrs. Brown contends that Mr. Brown, alone, signed the reimbursement agreement, and therefore, she is not obligated to pay reimbursement. However, under the definitional section of the policy, insured means "the insured person or his or her insured dependents, if any." The policy further states that "When `insured person' is used alone, it does not include dependents." The reimbursement agreement only requires that the "insured" agree to reimburse the Company. Consequently, the insured who signs the reimbursement agreement could be either the insured person or his or her insured dependents. Thus, Mr. Brown could sign the reimbursement agreement on behalf of Mrs. Brown. After all, Mrs. Brown was only covered under the policy because she was a dependent of Mr. Brown.
[4] Mr. and Mrs. Brown contend that they along with Linda Rockey, a representative of Washington National, entered into a verbal agreement in which Washington National would accept $10,000.00 of the settlement for its reimbursement claim. However, Ms. Rockey contends that her acceptance of the $10,000.00 was conditioned upon proof that the settlement agreement only allocated $20,000.00 to medical expenses.

A conditional obligation is one dependent on an uncertain event. LSA-C.C. art. 1767. If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive. LSA-C.C. art. 1767. The right to enforce the obligation does not arise until the fulfillment of the suspensive condition, and the obligation may not be enforced until the condition is met. Pringle Associated Mortgage Corporation v. Eanes, 211 So.2d 399, 405 (La.App. 1st Cir.1968), writ denied, 252 La. 887, 214 So.2d 715 (1968).
The evidence presented shows that Ms. Rockey's acceptance of the $10,000.00 was conditioned upon the medical portion of the settlement being $20,000.00 and a break down of the settlement amount showing that only $20,000.00 was allocated to medical expenses. The record reflects that Mr. and Mrs. Brown did not fulfill the suspensive condition. Therefore, Mr. and Mrs. Brown have no right to enforce the obligation of the verbal agreement.
[5] The trial court stated that the provision for determining the amount Washington National is entitled to for reimbursement is ambiguous. However, we disagree. The provision clearly states that Washington National is limited to the lesser of two figures. The problem arises when Mrs. Brown receives a lump sum settlement, and therefore, one of the figures cannot be determined.