329 So.2d 254 (1976)
LIBERTY MUTUAL INSURANCE COMPANY
v.
Sarah WEINBERGER.
No. 7163.
Court of Appeal of Louisiana, Fourth Circuit.
March 16, 1976.
Rehearing Denied April 13, 1976.
*255 Robert A. Katz, Metairie, for plaintiffappellee.
Maury A. Herman, Fred Herman, Herman & Herman, New Orleans, for defendant-appellant.
Before REDMANN, STOULIG and BEER, JJ.
REDMANN, Judge.
Injured in a two-automobile collision, defendant was paid medical expenses under her host-driver's vehicle insurance policy. That policy entitled the insurer to reimbursement from defendant out of any recovery from any person legally responsible for the injury causing the medical expense. Defendant settled with the other driver's insurer, but refused to reimburse her host's insurer. This suit followed, with judgment for the insurer and appeal by defendant. We affirm.
We ignore the "Reimbursement Agreement" which the insurer obliged defendant to sign, over her protest, as a prerequisite to payment of the $2,000 its policy obliged it to pay. Neither the insurer nor defendant intended to make any gift or compromise by that document, and it therefore cannot expand or contract either's rights. Its wording ("settlement of judgment") is thus immaterial.
Defendant stipulated that the other driver had driven through a stop sign into her host's car. This showed legal responsibility by that driver for plaintiff guest-passenger's injury.
Defendant argues that the policy's reimbursement provision is against public *256 policy, noting that La.R.S. 22:1406, subd. D(4) expressly provides analogous recovery in uninsured motorist coverage, while no such express legislative provision exists as to medical payments coverage. Defendant would suggest that it would be against public policy for her private hospitalization insurer to exact reimbursement like that here sought, and since she is the third-party beneficiary of her host's private medical payments insurance, it is equally unacceptable for plaintiff insurer to exact reimbursement.
We respond, first, that R.S. 22:611 makes § 620, subd. A applicable to all insurance but ocean marine and foreign trade, and § 620, subd. A allows policies to contain "any provisions or conditions required by its plan of insurance or method of operation which are not prohibited by the provisions of this [Insurance] Code." There is no prohibition of provisions such as ours. By analogy, § 1406, subd. D(4) (and § 691, providing subrogation in the standard fire policy) would support allowing a similar provision in medical payments policies. The "plan of insurance" that this insurer offered through this policy proposed a premium reduction in return for the net risk reduction brought about by the reimbursement provision.
Second, we add that public policy prefers reimbursement provisions in order to have the reduction in premium. There is no public advantage to the entire public paying a higher insurance premium in order that injured persons can collect twice for the same medical expenses.
Finally, we respond to defendant's concern that she has had to pay attorney's fees to obtain a settlement from which plaintiff insurer seeks reimbursement without contribution to attorney's fees. This policy does not attempt to collect from a settlement irrespective of fees and costs. Here, the policy's reimbursement (like that of uninsured motorist coverage, § 1406, subd. D(4)), is from "proceeds" of judgment or settlement, which could not result in the insured experiencing a loss by having to pay both 100% of a recovery to an insurer and an additional, say, 35% to a lawyer for fees and costs: the insurer's recovery comes only out of the net 65% "proceeds". The practical effect of this reimbursement provision is to make the insurer assume only the risk that the thirdparty tortfeasor may delay paying a claim because of a dispute over liability, or may be judgment-proof even if admitting liability. The insurance coverage is in a sense equivalent to a loan, repayable only in the event, and to the extent, that proceeds are obtained from a settlement or judgment with the tortfeasor.
It may seem questionable, at first glance, that the "insurer" recovers 100% of its outlay, while the "insured" does not, which occurs whenever the "proceeds" equal or exceed the amount the insurer paid. When this is the case, the insured does end up in the same final posture (ignoring possible interest accrual differentials) as if there were no insurance: but meanwhile the insured has received the same amount from the insurer immediately as he would have received (as "proceeds") from the tortfeasor only after litigation. And when it is not the case that the proceeds suffice to repay the insurer, then the insured has had the additional benefit of collecting from the insurer money that could not have been collected from the tortfeasor at all.
The insurance before us insured against no other risks.
Affirmed.